UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT T. STOKES,

*Plaintiff-Appellant,*

v.

MAXON LIFT INDUSTRIES,
INCORPORATED,

*Defendant-Appellee.*

No. 01-1569

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-00-2398-PJM)

Argued: April 4, 2002

Decided: June 4, 2002

Before WIDENER, WILKINS, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Nathan M. Murawsky, GOLOMB & HONIK, P.C., Phila-delphia, Pennsylvania, for Appellant. Michael James Carlson, ANDERSON, COE & KING, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** E. Dale Adkins, III, ANDERSON, COE & KING, L.L.P., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Robert T. Stokes appeals an order of the district court granting summary judgment to the defendant, Maxon Lift Industries, Inc., in this negligence action. Finding no error, we affirm.

I.

Maxon sells and distributes hydraulic lift gates from its headquarters in California. Maxon does not manufacture lift gates, however. Rather, the lift gates are produced by a Mexican company, FEMSA. As a part of the manufacturing process, FEMSA tests the hydraulic component of the lift gates; doing so requires that hydraulic fluid or oil[1] be injected into the hydraulic cylinder and the hydraulic line. At the conclusion of the manufacturing process, as much fluid as possible is drained from the cylinder and line. The cylinder is then removed and boxed separately for shipping, while the open end of the line is capped to protect the threads and to inhibit the leaking of any remaining fluid. The hydraulic line is coiled up and placed in a plastic bag, which is secured to the base of the line with a twist tie. FEMSA then ships the lift gates to Maxon, which stores them in an outside yard until they are shipped to customers.

At the time of the incident in question, Stokes was a truck driver for R.W. Sanders. Stokes' regular routine was to haul heavy equipment from the east coast to California and to haul Maxon's hydraulic lifts from California to the east coast. On June 30, 1997, Maxon employees loaded 38 lift gates onto Stokes' flat bed truck. Stokes then drove to his home in Pennsylvania, where he spent the July 4 weekend. During the weekend, Stokes' truck was left unattended at a truck stop.

---

[1]Throughout this litigation, the parties have used the terms "hydraulic fluid" and "oil" interchangeably.

Early in the morning on July 7, Stokes drove the truck to Hagerstown, Maryland, where he was to deliver one lift gate to Antietam Equipment. Stokes backed the truck into a warehouse, where the lift gate was removed by an overhead crane. After the lift gate had been removed, Stokes got onto the back of the trailer to resecure the remaining load. According to Stokes, while he was standing in the center of the trailer tightening the bindings on the remaining lift gates, he slipped on a slick substance and fell off the side of the trailer. Stokes landed on his wrist, crushing it.

Stokes subsequently brought this action against Maxon, alleging several theories of negligence. Essentially, Stokes' theory of the case is that hydraulic fluid leaked from a bag on one of the lift gates, creating a puddle of oil in which he slipped. Stokes argued that Maxon knew that the bags tended to leak and that Maxon, as a supplier of the lift gates, had a duty to solve the leakage problem. Alternatively, Stokes contends that Maxon had a duty to warn him of the possibility that the bags could leak oil onto the bed of his trailer.

Following discovery and a hearing, the district court granted summary judgment to Maxon. The court determined that Stokes' claim suffered from at least two critical deficiencies. First, the court noted that even if it assumed that Stokes had slipped in some kind of oil,[2] there was no evidence, other than Stokes' unsupported assertion, to establish that the oil came from one of the lift gates as opposed to the overhead crane used to unload the lift gates or a previous shipment of heavy machinery. *See Wasserman v. Hutzler Bros.*, 149 A.2d 1, 2 (Md. 1959) ("Where an injury may have been sustained as a result of several negligent acts, and the defendant is responsible for only one, the plaintiff cannot recover if the trier of facts would be required to

---

[2]Maxon's expert opined that the accident could not have happened as a result of Stokes slipping in something. Rather, the expert concluded that given the scenario described by Stokes—that he had fallen sideways from the center of the trailer and landed on the ground without touching the truck—the accident was likely caused by Stokes' losing his grip on a load binder as he was attempting to tighten it. Additionally, an employee of Antietam Equipment testified in deposition that he inspected the trailer after the accident and found no substance of any kind on the trailer bed.

speculate as to which of such acts of negligence actually caused the injury."). Second, the court observed that Stokes failed to present any evidence that leakage was the result of the bags being defective, as opposed to them being damaged in transit after Stokes left Maxon's premises.

## II.

Having reviewed the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court correctly granted summary judgment to Maxon. Accordingly, we affirm.

*AFFIRMED*